UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GANNON INTERNATIONAL, LTD, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 4:07-CV-31 CAS |
| ) | |
| LEXINGTON INSURANCE COMPANY, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This diversity matter is before the Court on separate motions for summary judgment filed by defendants Lexington Insurance Company ("Lexington") and Defendants Arrowood Surplus Lines Insurance Company, United States Fire Insurance Company and TIG Insurance Company (collectively referred to as the "Excess Carriers"). Plaintiffs Gannon International, Ltd., West Pointe Apartments, LLC, and Gannon Partnership 19, L.P. (collectively "Gannon") oppose the motions and each is ready for decision. For the following reasons, the Court will deny defendants' motions.

**Background**.

Gannon consists of the current and former owners of the West Pointe Apartments ("West Pointe"), a multi-unit apartment complex consisting of seventy-two buildings located on fifty-six acres in west St. Louis County, Missouri. This is an action for breach of contract, vexatious refusal to pay and declaratory judgment against insurance companies that insured the plaintiffs' property against losses for, among other things, physical loss, property damage, business interruption and rental value loss. Gannon alleges that the roofs and other parts of various buildings at West Pointe were severely

damaged by wind, rain and hail during storms occurring on October 24, 2001, March 9, 2002 and April 18, 2002, but the defendants have refused to pay under the applicable policies.

Gannon purchased a "layered" insurance program for property coverage. The primary layer, with a policy limit of $1 million, was issued by defendant Lexington. The first excess layer is for losses between $1 million and $4 million. The Excess Carriers would be liable for an equal portion of any loss, in any one occurrence, between $1 million and $4 million. The Excess Carriers' interests and exposure in the litigation are identical.

**Summary Judgment Standard**.

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029

(8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir.), cert. denied, 528 U.S. 1063 (1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004).

**Discussion**.

    A. *Replacement Cost Coverage*

Lexington and the Excess Carriers assert that they are entitled to summary judgment on plaintiffs' claim for replacement of the fifty-seven roofs at West Pointe that have not been replaced, because of language in the Lexington Replacement Cost Coverage Endorsement.[1] The relevant provision states that the insurer will not be liable under the Replacement Cost Coverage Endorsement "unless and until the damaged or destroyed property is actually repaired or replaced by the insured with due diligence and dispatch." See Lexington Ex. E, Excess Carriers Ex. E.

Lexington and the Excess Carriers assert that under the specific and unambiguous terms of the Lexington policy, Gannon is not entitled to replacement costs on damaged property unless and until it is repaired or replaced, and if Gannon fails to repair or place damaged property with due diligence and dispatch, it is entitled only to the Actual Cash Value ("ACV") of that property.

---

[1]The language of the Lexington policy also applies to the Excess Carriers' policies. The Excess Carriers' policies are "follow form," which means the excess policies follow the terms of the Lexington primary policy. See Excess Carriers' Brief in Supp. of Mot. for Summ. J. at 3, n.2.

3

Lexington and the Excess Carriers conclude that because Gannon has not repaired or replaced the roofs on fifty-seven of the seventy-two buildings at West Pointe almost seven years after the alleged hail storm, it is not entitled to replacement costs for those fifty-seven roofs.

Gannon responds that it has repaired fifty-one of the fifty-two roofs, and therefore the fact that it has not replaced the roofs is irrelevant. Gannon further responds that Lexington's failure to tender any amounts under the policy has made it financially impossible to replace the fifty-two roofs, and excuses Gannon from performing its replacement obligation. In support of its position, Gannon cites the general rule under Missouri law that a party to a contract who hinders performance by the other party may not avail itself of the nonperformance that it induced or occasioned, Hillis v. Blanchard, 433 S.W.2d 276, 279 (Mo. 1968) (en banc). Gannon also cites cases from other jurisdictions which apply this rule to hold that an insurer is estopped from arguing that an insured cannot demand replacement costs under a policy provision requiring actual replacement of the damaged property as a precondition to recovery where the insurer's conduct frustrates the insured's ability to satisfy the precondition. See Zaitchick v. American Motorists Ins. Co., 554 F. Supp. 209, 215-18 (S.D.N.Y. 1982), aff'd without opinion, 742 F.2d 1441 (2d Cir. 1983), cert. denied, 464 U.S. 851 (1983); State Farm Fire & Cas. Ins. Co. v. Micelli, 518 N.D.2d 357, 362 (Ill. Ct. App. 1987); Bailey v. Farmers Union Co-Op Ins. Co. of Neb., 498 N.W.2d 591, 598-99 (Neb. Ct. App. 1992). See also Ward v. Merrimack Mut. Fire Ins. Co., 753 A.2d 1214, 1218-21 (N.J. Super. Ct. App. Div. 2000).

The Court finds that genuine issues of material fact exist which preclude summary judgment on the issue of replacement cost coverage, including but not limited to whether Lexington's refusal

4

to tender even the actual cash value made it impossible for Gannon to satisfy the precondition of replacing the fifty-two roofs, and thus whether the condition is excused.

B. *Other Grounds for Summary Judgment*

Lexington and the Excess Carriers also move for summary judgment on several other grounds: (1) Gannon cannot prove its damages because it has no evidence of the actual cash value of the roofs before and after the alleged storm of October 24, 2001; (2) Gannon cannot prove that the roofs it replaced in 2002 and 2003 were damaged by hail because the roofs were replaced before they were inspected for hail damage; and (3) Gannon is not entitled to replacement costs for the roofs it replaced in 2005 and 2006 because those roofs were not replaced with due diligence and dispatch.

The Court finds defendants have failed to establish that no genuine issues of material fact are in dispute or that they are entitled to judgment as a matter of law on these grounds.

C. *The Excess Carriers' Motion for Summary Judgment on Count II*

The Excess Carriers move for summary judgment on Count II of the Amended Complaint, which asserts a claim for breach on contract based on wind losses occurring on March 9, 2002 and April 18, 2002. The Excess Carriers assert they are entitled to judgment as a matter of law because under the policies, excess coverage does not attach until the $1 million limit has been exhausted for any single occurrence and, using Gannon's replacement cost estimates, the costs associated with the two wind storms do not reach the $1 million level, under any circumstance. Gannon responds that Count II is directed solely to defendant Lexington, and not the Excess Carriers.

Count II of Gannon's Amended Complaint clearly seeks relief only against Lexington. This aspect of the Excess Carriers' motion for summary judgment should therefore be denied as moot.

**Conclusion**.

For the foregoing reasons, the Court concludes that defendants Lexington Insurance Company's motion for summary judgment should be denied, and the Excess Carriers' motion for summary judgment should be denied as moot with respect to Count II and denied in all other respects.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Lexington Insurance Company's motion for summary judgment is **DENIED**. [Doc. 58]

**IT IS FURTHER ORDERED** that defendants Arrowood Surplus Lines Insurance Company, United States Fire Insurance Company and TIG Insurance Company's motion for summary judgment Griffin is **DENIED as moot** with respect to Count II, and **DENIED** in all other respects. [Doc. 56]

*/s/ Charles A. Shaw*
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  6th  day of August, 2008.