UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GANNON INTERNATIONAL, LTD, et al., | ) |
| Plaintiffs, | ) |
| v. | ) No. 4:07-CV-31 CAS |
| LEXINGTON INSURANCE COMPANY, et al., | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This diversity matter is before the Court on a motion for partial summary judgment filed by plaintiffs Gannon International, Ltd., West Pointe Apartments, LLC, and Gannon Partnership 19, L.P. (collectively "Gannon") against defendant Lexington Insurance Company ("Lexington"). Lexington opposes the motion and it is fully briefed and ready for decision. For the following reasons, the Court will deny plaintiffs' motion.

**Background**.

Gannon consists of the current and former owners of the West Pointe Apartments ("West Pointe"), a multi-unit apartment complex consisting of seventy-two buildings located on fifty-six acres in west St. Louis County, Missouri. This is an action for breach of contract, vexatious refusal to pay and declaratory judgment against insurance companies that insured Gannon's property against losses for, among other things, physical loss, property damage, business interruption and rental value loss. Gannon alleges that the roofs and other parts of various buildings at West Pointe were severely damaged by wind, rain and hail during storms occurring on October 24, 2001, March 9, 2002 and April 16, 2002, but the defendants have refused to pay under the applicable policies.

**Summary Judgment Standard**.

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir.), cert. denied, 528 U.S. 1063 (1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment

has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004).

**Facts**.[1]

This is a property damage insurance case arising from a hail storm which hit the St. Louis area on October 24, 2001, and two separate wind storms which hit the St. Louis are on March 9, 2002 and on or about April 16, 2002. At the time of all three of these storms, Lexington carried the primary (first $1 million) layer in property damage insurance coverage on the West Pointe Apartments pursuant to a Commercial Property Policy (the "Policy").

The Policy contained certain exclusions from coverage. Gannon notified Lexington of the October 24, 2001 hail loss, the March 9, 2002 wind loss, and the April 16, 2002 wind loss. Lexington, through its staff adjuster Rob Long, engaged Wayne Cox, a local roofer, to investigate the March 9, 2002 wind loss. Lexington, again through its staff adjuster Mr. Long, engaged Jim Koontz, a New Mexico roofing consultant, to investigate the October 24, 2001 hail loss.

After inspecting the three roofs at issue in the March 9, 2002 wind loss, Mr. Cox issued a Report of Conditions to Mr. Long on April 15, 2002. In the Report, Mr. Cox opined that the damage to the roofs he inspected was caused by "insufficient adhesion and/or attachment. The loose membrane appears to be due to the techniques used during construction rather than storm related."

---

[1]The Court adopts the Statement of Uncontroverted Material Facts submitted by Gannon. Lexington did not include in its opposition memorandum a statement of material facts as to which it contends a genuine issue exists, as required by Local Rule 4.01(E). As a result, for purposes of this motion Lexington is deemed to have admitted all facts contained in Gannon's Statement of Uncontroverted Material Facts. See Deichmann v. Boeing Co., 36 F.Supp.2d 1166, 1168 (E.D. Mo. 1999); see also Ridpath v. Pederson, 407 F.3d 934, 936 (8th Cir. 2005) (where plaintiff did not controvert defendant's statement of material fact, it was deemed admitted under E. D. Mo. Local Rule 4.01(E)).

After inspecting fourteen (of seventy-two total) roofs at issue in the October 24, 2001 hail loss, Mr. Koontz issued a Roof Inspection Report to Mr. Long on July 22, 2002. In the Report, Mr. Koontz opined that the roofs "have been installed in a grossly deficient matter."

On or about December 18, 2002, plaintiffs submitted to Lexington a Sworn Statement in Proof of Loss with respect to the March 9 2002 wind loss and the April 16, 2002 wind loss, in the net amount of $37,277.00 (the "Proof of Loss"). Lexington never denied the Proof of Loss in writing. Lexington did not deny the October 24, 2001 hail loss in writing, did not issue a non-waiver agreement to Gannon with respect to the October 24, 2001 hail loss, and did not issue a reservation of rights letter to Gannon with respect to the October 24, 2001 hail loss.

Lexington did not deny the March 9, 2002 wind loss in writing, did not issue a non-waiver agreement to Gannon with respect to the March 9, 2002 wind loss, and did not issue a reservation of rights letter to Gannon with respect to the March 9, 2002 wind loss.

Lexington did not deny the April 16, 2002 wind loss in writing, did not issue a non-waiver agreement to Gannon with respect to the April 16, 2002 wind loss, and did not issue a reservation of rights letter to Gannon with respect to the April 16, 2002 wind loss.

Lexington did not pay any amounts to Gannon under the Policy with respect to the October 24, 2001 hail loss, the March 9, 2002 wind loss, or the April 16, 2002 wind loss.

Lexington did not notify Gannon that it needed more time to determine whether to accept or deny the October 24, 2001 hail loss, the March 9, 2002 wind loss or the April 16, 2002 wind loss. Lexington did not provide any periodic update letters to Gannon which set forth reasons Lexington needed additional time for the investigation.

Since the October 24, 2001 hail loss, Gannon has complete replaced the roofs, gutters, siding and mansard shingles and has repainted or stained fences and decks at the following West Pointe Apartments buildings:

2002 Replacements

A. Phase IV, Building 22
B. Phase IV, Building 29
C. Phase I, Building 9
D. Phase IV, Building 23
E. Phase IV, Building 2

2003 Replacements

F. Phase IV, Building 7
G. Phase IV, Building 24
H. Phase IV, Building 12
I. Phase IV, Building 10

2005 Replacements

J. Phase IV, Building 15
K. Phase IV, Building 27
L. Phase IV, Building 11
M. Phase IV, Building 9
N. Phase III, Building 7

2006 Replacement

O. Phase IV, Building 13.

**Discussion**.

Gannon moves for partial summary judgment on Lexington's Affirmative Defense No. 4, which asserts that Gannon's claims are specifically excluded from coverage under the Policy pursuant to certain provisions set forth in the Policy "Causes of Loss--Special Form" section. Gannon asserts that Lexington has waived the right to rely on the policy exclusions and should be estopped from doing so as a matter of law because Lexington (1) failed to accept or deny Gannon's claims within

fifteen days of receipt of all information as required by the Missouri Unfair Claims Settlement Practices Act, Mo. Rev. Stat § 375.1000, et seq., (the "Act"); and (2) failed to comply with its own written procedures and standards adopted pursuant to the Act (the "Lexington Standards"), which provide that a claim adjuster "should immediately take a non-waiver agreement when . . . there is a question of coverage or liability," and that "if a non-waiver agreement is not attainable, the adjuster should immediately send a Reservation of Rights letter to the insured."

    A. *Waiver*

Under Missouri law, waiver is the intentional relinquishment of a known right by one of the parties to a contract. Brown v. State Farm Mut. Auto. Ins. Co., 776 S.W.2d 384, 387 (Mo. 1989) (en banc). "Waiver is founded upon the intentional relinquishment of a known right. If waiver is implied from conduct, the conduct must clearly and unequivocally show a purpose to relinquish the right." Id. (internal quotation marks and quoted case omitted).

Gannon does not cite any substantive case law to support its waiver argument. The Court cannot hold as a matter of law that Lexington waived its right to enforce the exclusions cited in its Answer because there is no evidence in the record to show that Lexington took any intentional or voluntary act with the clear and unequivocal purpose of relinquishing its rights to enforce the policy provisions. See MCI Metro Access Transmission Servs., Inc. v. City of St. Louis, 941 S.W.2d 634, 639-40 (Mo. Ct. App. 1997). "The conduct must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation is possible." Id. (internal quotation marks and quoted case omitted).

Because Gannon does not provide evidence of Lexington's clear and unequivocal intent to act with the purpose of relinquishing its right to enforce the policy provisions, this aspect of its motion for summary judgment should be denied.

B. *Estoppel*

Under Missouri law, the elements of estoppel are "(1) an admission, statement or act inconsistent with the claim afterwards asserted and sued upon, (2) action by the other party on the faith of such admission, statement or act, and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement, or act." Brown, 776 S.W.2d at 388 (quoted case omitted). Estoppel can arise "from the unfairness of permitting a party to belatedly assert rights if he knew of those rights but took no steps to enforce them until the other party has, in good faith, become disadvantaged by changed conditions." Stenger v. Great Southern Sav. and Loan Ass'n, 677 S.W.2d 376, 383 (Mo. Ct. App. 1984) (citing Missouri Fed'n of Blind v. National Fed'n of Blind of Mo., 505 S.W.2d 1, 9-10 (Mo. Ct. App. 1973)). "[E]stoppel is not a favorite of the law and will not be lightly invoked; it should be applied with care and caution and only when all elements constituting estoppel clearly appear." Blake v. Irwin, 913 S.W.2d 923, 935 (Mo. Ct. App. 1996).

Gannon argues that Lexington is estopped from relying on the policy exclusions because it never advised Gannon of the exclusions until it filed its Answer in this case, and that Gannon was prejudiced because it replaced fifteen roofs between 2002 and 2006 without retaining or preserving evidence such as roof samples, photographs, videos, etc., which it would have retained or preserved had it known that Lexington was going to raise the potentially applicable policy exclusions. Gannon

7

also asserts that Lexington should be estopped from relying on the policy exclusions because it failed to comply with the Lexington Standards.

Gannon does not cite an admission, statement or act by Lexington on which Gannon relied to its detriment. Rather, Gannon asserts only that Lexington was silent in response to its claims under the Policy. Gannon has not cited any case law to support its contention that Lexington's failure to deny its claim or to conform to the Lexington Standards can form the basis of an estoppel.

The record includes facts tending to show that Gannon has known since 2002 that Lexington contends the West Pointe roofs were not damaged by hail but rather were improperly installed. Gannon has not established the existence of any actions by Lexington during the adjustment of its claimed losses which were inconsistent with Lexington's subsequent assertion of its rights under the policy. Absent an admission, statement or act by Lexington which is inconsistent with its later assertion of policy exclusions, estoppel cannot apply. Cf. Brown, 776 S.W.2d at 389.

In addition, Gannon has not established as a matter of law that it suffered the third element of estoppel, injury or prejudice. As stated above, Gannon may have known since 2002 that Lexington contended the roofs were improperly installed and that the installation caused or contributed to the claimed damage. Gannon therefore may have had the knowledge necessary to determine whether it should have taken steps to preserve evidence from the roofs it replaced. In addition, it is uncontroverted that fifty-seven roofs have yet to be replaced, which appear to include some of the roofs inspected by Messrs. Cox and Koontz, and therefore Gannon may still have in its possession evidence to rebut Lexington's claims of improper installation.

Because Gannon has not established that it is entitled to partial summary judgment as a matter of law with respect to estoppel, this aspect of its motion should be denied.

**Conclusion**.

For the foregoing reasons, Gannon's motion for partial summary judgment on defendant Lexington's affirmative defense No. 4 should be denied in all respects.

Accordingly,

**IT IS HEREBY ORDERED** that Gannon's Motion for Partial Summary Judgment on defendant Lexington Insurance Company's Affirmative Defense No. 4 is **DENIED**. [Doc. 59]

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  6th  day of August, 2008.